# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Emily Zervas, | Case No.: 2:18-cv-00051-JAD-GWF |
| Plaintiff | |
| v. | **Order Denying Defendant's Summary-Judgment Motion, Granting Plaintiff Summary Judgment and Leave to Amend, and Denying All Other Motions as Moot** |
| USAA General Indemnity Co., | |
| Defendant | [ECF Nos. 14, 40, 41, 44, 45] |

Emily Zervas was severely injured as a passenger in a motorcycle accident caused by an uninsured driver, and her loss exceeded the $500,000 combined limits of the three uninsured-motorist (UM) policies that covered the accident. Geico and State Farm each paid out their $100,000 policy limits. But defendant USAA tendered just 60% of its $300,000 limit, so Zervas sues for breach of contract and declaratory relief, seeking the remainder of the USAA coverage.

USAA moves for summary judgment. It acknowledges that its $300,000 policy makes up 60% of the $500,000 in available coverage, but it contends that the "other insurance" clause in its policy sets its coverage obligation at 60% of its own policy limit—for a total of just $180,000. Because USAA's other-insurance clause conflicts with the allocation provisions in the other applicable policies, Nevada law requires me to disregard USAA's formula and instead prorate Zervas's loss among the insurers based on their share of the aggregate policy limits, making USAA responsible for 3/5 of the $500,000 covered loss, or $300,000. I therefore deny USAA's motion for summary judgment and instead grant summary judgment in favor of Zervas on her breach-of-contract and declaratory-relief claims. And with good cause appearing, I grant Zervas's motion to amend her complaint to add a bad-faith claim.

**Discussion**

**I.     USAA's summary-judgment motion [ECF No. 14]**

Like many insurance disputes involving multiple polices, this case turns on the interplay between clauses in the applicable policies that dictate who pays how much when several policies provide benefits for a covered loss. Known in insurance-industry speak as "other insurance" provisions, these ubiquitous clauses "seek to limit the insurer's obligations in the event that there is another policy [i.e., other insurance] that covers the same risk."[1] USAA seeks to do just that here. The policy it sold to Zervas's mother affords $300,000 per person in UM coverage. But because Zervas's loss is also covered by two other $100,000 policies issued by Geico and State Farm,[2] USAA seeks to limit its obligation to a fraction of its own $300,000 policy, instead of a fraction of the aggregated three policies ($500,000).

**A.     When there's a conflict among applicable policies' allocation methods, the court must prorate the loss based on the aggregate policy limits.**

Difficulties arise when a loss is covered by several policies and each provides a different method of allocating benefits. Courts have developed several approaches to address this type of conflict. Nevada has adopted[3] the rule articulated by the Oregon Supreme Court in *Lamb-Weston, Inc. v. Oregon Automobile Insurance Co*.[4] Under the *Lamb-Weston* rule, "when 'other

---

[1] *Hous. Grp. v. Gerling Am. Ins. Co.*, 107 F. Supp. 2d 1185, 1188 (N.D. Cal. 2000).

[2] Although Zervas was not the policyholder on any of these three polices, it is undisputed that each policy afforded her UM coverage for the accident.

[3] *Travelers Ins. Co. v. Lopez*, 567 P.2d 471, 474 (Nev. 1977).

[4] *Lamb-Weston, Inc. v. Or. Auto. Ins.*, 346 P.2d 643 (Or. 1959).

insurance' clauses cannot be reconciled,"[5] they are all deemed void,[6] and the court must apply a simple proration formula: prorating the insured's loss by the ratio that each policy's limit bears to the sum of all the applicable limits (up to each policy's limit). This rule "avoids arbitrariness in the selection of conflicting clauses," "discourages litigation between insurers, and . . . provide[s] a basis for a uniformity of result."[7]

If the other-insurance clause in Zervas's mother's USAA policy conflicts with the other-insurance language in the State Farm or Geico policy here, Nevada law requires me to apply the *Lamb-Weston* rule, disregard USAA's other-insurance provision, and hold USAA responsible for its pro rata share of the loss based on the aggregate $500,000 in coverage. Before I can conclude that this rule applies, however, I must first determine whether the allocation methods in the policies are consistent or contradictory.

### B. The allocation method in USAA's other-insurance clause conflicts with those in the State Farm and Geico policies.

Looking at the coverage that Zervas is entitled to under these policies, it is clear that one affords primary coverage and the other two afford excess coverage. "Primary insurance coverage is provided when, under the terms of the policy, liability attaches immediately upon the happening of an occurrence that gives rise to liability, as opposed to excess or secondary coverage, which attaches only after a predetermined amount of primary coverage has been

---

[5] *Port of Portland v. Water Quality Ins. Syndicate*, 796 F.2d 1188, 1193 (9th Cir. 1986).

[6] *Travelers Ins.*, 567 P.2d at 474; *see also Lamb-Weston*, 341 P.2d at 119 (1959) ("[W]hether one policy uses one clause or another, when any come in conflict with the 'other insurance' clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto.").

[7] *Travelers Ins.*, 567 P.2d at 474.

exhausted."[8]  Although neither USAA nor Zervas addresses this primary-excess distinction, proper characterization of the various insurers' coverage is the first step to understanding the three policies' other-insurance clauses.

Because the accident involved a motorcycle insured by its owner's Geico policy, that policy provided Zervas primary UM coverage.[9]  Geico's other-insurance clause contains customary proration language that states that Geico's proportion of responsibility will be the ratio of its policy limit to the sum of all applicable limits—in this case, $100,000 out of $500,000, or 20%.[10]  Geico tendered its full $100,000 for this accident.

Zervas's father had a State Farm policy that also covered this accident.  That policy provides primary UM coverage only if a person covered by the policy is injured while "occupying" a car owned by the policyholder.[11]  Because the motorcycle Zervas was riding wasn't owned by her father, the State Farm policy affords Zervas excess coverage.  That policy also contains customary language that prorates State Farm's excess coverage with other applicable excess-insurance providers.[12]  State Farm calculates its proportion of responsibility as the ratio of its policy limit to the sum of all applicable excess-policy limits.

---

[8] *Indus. Finishes & Sys., Inc. v. Am. Universal Ins. Co.*, 720 P.2d 382, 385 (Or. App. Ct. 1986).

[9] ECF No. 14-3 at 8 ("If there is other applicable insurance, *we* will pay only *our* share. *Our* share is the proportion on that *our* limit of liability bears to the total of all applicable limits. However, any insurance *we* provide with respect to a vehicle *you* do not own shall be excess over any other collectible insurance.").

[10] *Id.*

[11] ECF No. 14-4 at 7 ("The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*. . . . Except as provided . . . above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.").

[12] *Id.* ("If uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident, then *We* will pay the proportion of damages payable as excess that *Our* applicable limit bears to the sum of *Our*

4

Zervas's mother held the USAA policy at issue. Like the State Farm policy, USAA's provides only excess coverage for this accident because Zervas was injured in a vehicle not owned by her mother, the policyholder.[13] This policy also contains an other-insurance clause that prorates USAA's share based on the total excess coverage available under all policies:

> On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a [sic] excess basis. **Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a [sic] excess basis**.[14]

Because the total available excess coverage is $400,000 (State Farm's $100,000 + USAA's $300,000), USAA's share under this provision would be $300,000/$400,000 or 3/4, and State Farm's share is $100,000.[15] State Farm tendered its $100,000.

But USAA paid just $180,000, not 3/4 of the $400,000 in available excess coverage (which works out to $300,000). To justify a reduced share, USAA relies on a different portion of its other-insurance clause, which states that "[a]ny recovery for damages under all [applicable UM] policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis."[16]

---

applicable limit and the limits of all other uninsured motor vehicle coverage that apply as excess coverage." (capitalization and underlining omitted)).

[13] ECF No. 34 at 16 ("Any insurance **we** provide with respect to a vehicle **you** do not own or to a person other than **you** or any **family member** will be excess over any other collectible insurance.").

[14] *Id*. (emphasis revised).

[15] Because the parties didn't consider the primary-excess distinction, they both calculate USAA's proportion of responsibility as $300,000/$500,000 or 3/5 instead of 3/4. But because I conclude below that the three policies' other-insurance clauses conflict, I ultimately disregard them and prorate Zervas's total loss by the ratio of USAA's policy limit to the sum of all applicable limits and thus arrive at the same ratio the parties assert: 3/5 or 60%. *See infra* Section I.C, pp. 7–8.

[16] ECF No. 34 at 16 (emphasis omitted).

5

USAA contends that this language, when combined with its pro rata provision, unambiguously requires it to prorate (by its proportion of responsibility) against the highest individual policy limit—i.e., 60% of its own $300,000 limit, instead of the aggregate limits of the three policies.[17] The net effect of this provision is that USAA is calculating its ratio based on a pro rata share of its policy alone, while Geico and State Farm are calculating their ratios based on an aggregate total.[18] These differences produce inconsistent math and incompatible obligations.

USAA argues that its pro rata provision doesn't conflict with Geico and State Farm's other-insurance clauses because the three policies require each respective insurer to prorate the highest individual policy limit.[19] USAA alternatively contends that, even if a conflict exists and all three policies must be disregarded under the *Lamb-Weston* rule, the same type of proration would result.[20] In short, USAA is asserting that its peculiar method of proration is the standard approach applied in the insurance industry.

But USAA's argument misapprehends how standard proration works. Although there are multiple ways that insurers can prorate a loss,[21] the term "prorate" in this context refers to

---

[17] ECF No. 14 at 9–10.

[18] Without deciding whether this policy language is sufficiently clear under Nevada law, *see* Nev. Rev. Stat § 687B.145(1) (requiring that insurance policies that limit an insured's benefits under multiple applicable policies to the highest individual policy limit must state this limitation "in clear language [that is] prominently displayed in the policy, binder or endorsement"), I find that USAA's interpretation of its policy is reasonable.

[19] ECF No. 14 at 9 ("The *Other Insurance* provisions of each policy provide for the exact same result - that each insurer pays its pro-rated share of the highest limit ($300,000).").

[20] *Id*. ("However, even if the *Other Insurance* provisions did conflict, the result under Nevada law and the *Lamb-Weston* rule would be the same - the *Other Insurance* provisions would be disregarded and each insurer would be responsible to pay its pro-rated share of the highest policy limit.").

[21] *Hous. Grp.*, 107 F. Supp. 2d at 1189 n.2 ("The precise method for prorating the *loss* differs from policy to policy. Some policies call for co-insurers to match each others' coverage, dollar-

6

allocating an insured individual's *total loss* between the applicable insurers based on an agreed upon ratio[22]—in this case, the ratio of each individual policy limit to the sum of all applicable policy limits. Neither the Geico nor State Farm policy language limits the total benefits Zervas could receive from all policies to the highest of the three policies, and it is evident that neither Geico nor State Farm followed USAA's proration approach. Had they, each would have paid just 20% of $300,000, for a per-insurer payout of $60,000; but both tendered $100,000. And had all the insurers used USAA's approach and calculated their ratios based on the highest policy limit of $300,000, Zervas's total recovery would have been just $300,000 instead of the $380,000 she has already received. USAA's proration method plainly calls for a different result than Geico and State Farm's pro rata provisions do.

### C. Because these allocation methods conflict, the *Lamb-Weston* rule requires the court to prorate the loss based on the aggregate policy limits.

By capping exposure using the lower value of its own policy limit and not by the total of all applicable coverage as the Geico and State Farm policies do, USAA's interpretation puts these provisions in irreconcilable conflict and triggers the *Lamb-Weston* rule.[23] I therefore apply

---

for-dollar, up to their respective policy limits. Others call for a division of coverage in proportion to each insurer's policy limit." (emphasis added)).

[22] *See, e.g.*, *id.*; *Jones v. Medox, Inc.*, 430 A.2d 488, 489 n.1 (D.C. 1981) ("There are three basic types of 'other insurance' provisions . . . . The pro rata clause provides that the insurer will pay its pro rata share of the *loss*, usually in the proportion that the limit of its policy bears to the aggregate limits of all valid and collectible insurance. The excess clause generally provides that the insurer's liability is limited to the amount by which the *loss* exceeds the coverage provided by all other valid and collectible insurance, up to the limits of the excess policy." (emphasis added)); *see also* Douglas R. Richmond, *Issues and Problems in "Other Insurance," Multiple Insurance, and Self-Insurance*, 22 Pepp. L. Rev. 1373, 1383–84 (1995) (providing an example of proration and multiplying the total loss that the insured incurred by the ratio of each individual policy limit to the sum of all applicable limits).

[23] USAA and Zervas address only the conflict between the three pro rata provisions. But the policies' distinction between primary and excess coverage creates another layer of conflict: Geico sought to prorate Zervas's loss with State Farm and USAA, whose policies call for Geico

the rule, disregard the conflicting clauses, and prorate Zervas's total loss by the ratio of USAA's policy limit to the sum of all applicable policy limits: $300,000 of the aggregate $500,000 = 60% of the obligation to cover Zervas's loss. Because the amount of Zervas's total loss exceeds the aggregate policy limits of $500,000, that loss is capped at $500,000. So, Zervas is entitled to receive from USAA 60% of the $500,000, which is $300,000—the USAA policy limit. USAA's $180,000 payment was thus $120,000 light. I therefore deny USAA's motion for summary judgment in its favor on Zervas's breach-of-contract and declaratory-relief claims.

And because the facts of this case are undisputed and the question of how much Zervas is entitled to under USAA's policy is purely legal, I also exercise my discretion under Federal Rule of Civil Procedure 56(f) to sua sponte grant summary judgment on these claims in favor of Zervas. Although Rule 56(f) requires a court to first give a party "notice and a reasonable time to respond" before granting a non-moving party summary judgment, I find that the legal issues involved were sufficiently addressed by the extensive briefing on USAA's summary-judgment motion.[24] And because that briefing has revealed that there is no genuine issue of material fact and that Zervas is entitled to judgment as a matter of law on these claims,[25] I grant summary

---

to first exhaust its coverage before they will pay out benefits. This is the classic *Lamb-Weston* conflict and is alone grounds for disregarding the other-insurance clauses. *See Lamb-Weston*, 341 P.2d at 112, 114–16 (addressing the conflict between a primary, pro rata provision and an excess-coverage provision); *see also Hous. Grp.*, 107 F. Supp. 2d at 1188–89 (discussing the common *Lamb-Weston* conflict scenarios).

[24] 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2720.1 (4th ed. 2018) ("Entering a judgment when there has been a motion but no cross-motion is somewhat different from the situation in which neither party has moved under Rule 56 and the court wishes to act sua sponte. When there has been a motion but no cross-motion, the judge already is engaged in determining whether a genuine dispute as to material fact exists and the parties have been given an opportunity to present evidence designed either to support or refute the request for the entry of judgment.").

[25] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (holding that summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to

judgment in favor of Zervas on these claims and find that she is entitled to the remaining $120,000 in benefits from USAA. However, I do not enter final judgment on these claims because Zervas has moved to amend her complaint to add a bad-faith claim, and I find that all of these claims are sufficiently related to warrant delaying the entry of partial judgment under Rule 54(b).[26]

### D. Nevada's anti-stacking statute has no impact on USAA's obligation to Zervas.

This result is in no way undermined by USAA's contention that its policy complies with Nevada's anti-stacking statute, NRS 687B.145. Under this statute, an insurance policy

> may provide that if the insured has coverage available to the insured under more than one policy or provision of coverage, any recovery or benefits may equal but not exceed the higher of the applicable limits of the respective coverages, and the recovery or benefits must be prorated between the applicable coverages in the proportion that their respective limits bear to the aggregate of their limits.[27]

To comply with this statute, an insurance policy must satisfy three requirements: (1) it must express its limitation in "clear language"; (2) the limiting language must be "prominently displayed in the document"; and (3) "the insured must not have purchased separate coverage on the same risk nor paid a premium calculated for full reimbursement under that coverage."[28]

---

any material fact and that the movant is entitled to judgment as a matter of law" and citing Fed. R. Civ. P. 56(c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[26] *See* Fed. R. Civ. P. 54(b) ("When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.").

[27] Nev. Rev. Stat. § 687B.145(1).

[28] *Bove v. Prudential Ins. Co. of Am.*, 799 P.2d 1108, 1110 (Nev. 1990).

9

The parties devote the bulk of their briefing to addressing whether USAA's policy satisfies these requirements. But assuming without deciding that the policy does satisfy these requirements and that USAA's policy-limits proration formula complies with Nevada law,[29] the statute merely *permits* an insurer operating in Nevada to include a provision limiting the total recovery from all applicable policies to the highest applicable limit; it does not *require* insurers to include such a provision, and Geico and State Farm chose not to. That conflict among the applicable policies' allocation methods nevertheless triggers the *Lamb-Weston* rule and compels the result I reach above. USAA has not argued—let alone cited authority demonstrating—that NRS 687B.145 abrogates or alters the *Lamb-Weston* rule. So, Nevada's anti-stacking statute has no impact on USAA's $300,000 obligation to Zervas in this case.

**II.  Remaining motions related to USAA's summary-judgment motion [ECF Nos. 40, 41, 44]**

USAA moved to stay discovery while its summary-judgment motion was pending.[30] The magistrate judge denied that motion,[31] and USAA filed an objection to that ruling.[32] Now that I have resolved USAA's summary-judgment motion, its stay request is moot, and I overrule the objection as moot.

Zervas moves for leave to file a motion to strike a portion of USAA's reply brief in support of its summary-judgment motion addressing the filed-rate doctrine, and USAA moves for leave to file a supplemental brief on this same issue.[33] Because the doctrine relates to the

---

[29] *See supra* note 18.
[30] ECF No. 16.
[31] ECF No. 39.
[32] ECF No. 40 (objecting to order at ECF No. 39).
[33] ECF Nos. 41, 44.

question of whether USAA's policy satisfies one of the three requirements of Nevada's anti-stacking statute, and I assumed without deciding that the policy complies with the statute for purposes of this order, this issue was irrelevant to my disposition of USAA's summary-judgment motion. So, I deny as moot both the motion for leave and the motion to supplement.

### III. Motion to amend the complaint [ECF No. 45]

Finally, Zervas moves to amend her complaint to add a new claim to allege that USAA acted in bad faith by remitting less than its policy limit and that she is therefore entitled to punitive damages. Federal Rule of Civil Procedure 15 directs that "[t]he court should freely give leave when justice so requires,"[34] and district courts consider five factors in deciding whether to grant leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment, and (5) whether the party has previously amended its pleading.[35] These factors weigh in Zervas's favor, as she has not previously amended her complaint and her proposed new claim is premised in part on information learned during discovery,[36] which demonstrates a lack of undue delay or bad faith on her part. And there is no evident prejudice to USAA or futility to amending. I therefore grant Zervas's motion and give her leave to amend her complaint. Zervas has ten days to file her amended complaint in the form proposed at ECF No. 45.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED THAT

- USAA's motion for summary judgment **[ECF No. 14] is DENIED**;

---

[34] Fed. R. Civ. P. 15(a)(2).

[35] *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

[36] *See* ECF No. 45 at 6–9.

11

- **Partial summary judgment is granted in favor of Zervas** on her breach-of-contract and declaratory-relief claims; Zervas is entitled to $120,000 in additional UM benefits from USAA;

- The court declines to certify this ruling on these claims as final under Rule 54(b) certification at this time;

- USAA's objection to the magistrate judge's order **[ECF No. 40]** and its motion to file a supplemental brief **[ECF No. 44] are DENIED** as moot;

- Zervas's motion for leave to file a motion to strike a portion of USAA's reply brief **[ECF No. 41] is DENIED** as moot; and

- Zervas's motion for leave to amend her complaint **[ECF No. 45] is GRANTED.** Zervas has ten days to file her amended complaint in the form proposed at ECF No. 45.

Dated: February 27, 2019

_____
U.S. District Judge Jennifer A. Dorsey